UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN


LEA ANN GOSSER
    Plaintiff

v.                                                No. 1:09CV-00043-J

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant


MAGISTRATE JUDGE'S REPORT
and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Nancy Oliver Roberts. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 13, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on November 24, 2008, by administrative law judge (ALJ) Patrick Kimberlin III. In support of his decision denying Title II benefits, Judge Kimberlin entered the following numbered findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 8, 2006 through her date last insured of December 31, 2007 (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: bipolar disorder and anxiety disorder, not otherwise specified (20 CFR 404.1521 et seq.).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine, one to three step job duties and instructions; thing or object-focused work activity; and no fast paced work. The claimant is also limited to a fixed routine and occasional contact with supervisors, coworkers, and the general public on a casual and brief basis.

6. Through the date last insured, the claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on April 21, 1971 and was 36 years old, which is defined as a younger individual, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 8, 2006, the alleged onset date, through December 31, 2007, the date last insured (20 CFR 404.1520(g)).

(Administrative Record (AR), pp. 13-18).

### Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are

supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision. *Richardson v. Perales*, 402 U.S. 389 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to  support  a  conclusion. *Kirk v. Secretary*,   667  F.2d  524 (6th Cir., 1981).  It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a  verdict."  *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account  whatever  in  the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence  that   was before the Commissioner on the date of the final decision.  When  the Appeals Council declines to review the ALJ's decision and render a new decision, the  ALJ's decision becomes the Commissioner's final decision.  *Cotton  v.  Secretary*,  2  F.3d  692 (6th Cir., 1993).

2.   To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3.  Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990).  The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### Discussion

The ALJ acknowledged that the plaintiff suffers from bipolar disorder and anxiety disorder, not otherwise specified.  Finding No. 3.  The plaintiff presents eight numbered contentions.  We shall consider the arguments in an order that appears to us to facilitate an understanding of the issues.

## Fifth Contention

The plaintiff's fifth numbered contention sheds light upon the effects the plaintiff's bipolar and anxiety disorders have had upon the people who are have lived with or otherwise been close to the plaintiff. The issue is important in a Social Security disability claim because, to be employable, a person must have a certain minimal ability to get along with supervisors, co-workers, and the public.

According to the ALJ, Roy Reynolds, M.D., is the plaintiff's ex-husband (AR, p. 17). In a letter dated September 15, 2008, Dr. Reynolds opined as follows (AR, pp. 297-298):

> I have been asked to comment on the above individual concerning an application for social security disability potential benefits.
>
> Mrs. Gosser is well known and is previous patient at my office. I have not seen her in approximately seven years but I am also fully qualified to give an opinion as to her obvious disability.
>
> Mrs. Gosser has been diagnosed with multiple diagnoses including a relatively severe form of bipolar affective disorder and bulimia the latter causing her to lose most of her teeth.
>
> Over the at least fifteen years I have known her I am aware of many hospital admissions for the above problems. I have personally given her recommendations in the past to help her get jobs which she never seems to be able to hold onto for any significant period. Her eating disorder has almost resulted in her dying at Vanderbilt University in the past when her immune system was so taxed that she developed a near fatal pneumonia.
>
> She has had many outbursts of behavior with fellow employees, bosses and family members that were hostile and aggressive.
>
> Like many persons with bipolar disease, she has been involved in substance abuse in the past especially hydrocodone and has been through various treatment programs.

At times she has been suicidal and has threatened to kill people over disagreements including myself. She once pulled a gun on me and threatened to kill me. She has tried to run over at least one person with a motor vehicle in the past when terribly upset and not taking her medications. When not in her mania stage she is the life of the party and very likable but these are also characteristics of bipolar affective disorder.

She has seen multiple psychiatrists and psychologists in the past.

Also like many bipolar patients, she has been sexually promiscuous. She has had four divorces but is presently married to the best of my knowledge. I do not think anyone could live with her very long. Stealing and lying are not foreign to her.

To me she is **totally UNemployable** *(emphasis by Dr. Reynolds)* and cannot be trusted to work effectively with other employees. She may in fact be a significant threat to anyone that interacts with her.

I have seen at least a dozen disabled patients with awarded bipolar affective disorder disability but this young woman is the worst case I have seen in my 36 years of clinical practice.

Without any doubt in my mind she is totally and permanently disabled. I suspect if she does not commit suicide someday she will end up institutionalized eventually.

I would also add that if given social security benefits that someone other than herself should be in control of any funds involved.

Because Dr. Reynolds is an ex-husband and also a physician, the ALJ could arguably have analyzed his opinion as a medical opinion, as a lay opinion, or both. The ALJ's decision reflects that he analyzed Dr. Reynolds' opinion only as a medical opinion. See written decision at AR, p. 17, citing 20 C.F.R. § 404.1527(d)(2), which provides that a treating source's "medical opinion" is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." The ALJ concluded that Dr. Reynolds' opinion was not entitled to controlling weight and, in fact, was entitled to "little weight" because Dr. Reynolds "admitted that he had not treated [the plaintiff] in seven years [and is] a family practitioner and not a specialist" (AR, p. 17).

The magistrate judge concludes that the opinions contained in Dr. Reynolds' letter dated September 15, 2008, do not rise to the level of a "medical opinion" as contemplated by § 404.1527. Rather, they are more akin to a vocational opinion of disability which, as a physician, Dr. Reynolds was unqualified to give. "A statement by a medical source that you are disabled or unable to work" is entitled to no "special significance" as such determinations are "reserved to the Commissioner." 20 C.F.R. § 404.1527(e). Therefore, the ALJ did not err in giving Dr. Reynolds' medical opinions "little weight." We shall consider Dr. Reynold's letter as a lay opinion in connection with the plaintiff's third numbered contention, infra.

## Fourth Contention

The plaintiff's fourth contention is that "the ALJ was erroneously biased during the hearing because he continually became upset with the plaintiff [and] her attorney, continually requesting that the hearing be postponed, and interrupted the testimony by the plaintiff and her aunt." Previously, the plaintiff moved for an oral argument in this case to establish that the ALJ "hollered" at the plaintiff during the hearing and otherwise exhibited improper demeanor and behavior rising to the level of a violation of due process (Docket Entry No. 7). The undersigned denied the motion with the provision that "[i]f it appears that oral arguments become necessary after further review of the administrative record and memoranda of the parties, oral arguments may be scheduled by the court sua sponte" (Docket Entry No.11).

The magistrate judge has read the hearing transcript and concludes that it does appear that something about the plaintiff's person or demeanor provoked what may be described as a negative reaction on the ALJ's part. For example, at one point, the ALJ interjected "God, it's hard [for you] to answer a simple question. Isn't it?" (AR, p. 77). For purposes of analyzing the plaintiff's

7

due process claim, we shall assume for the sake of argument that the ALJ did, in fact, "holler" at the plaintiff and that he showed signs of impatience, hostility, and even anger.  Hence, it will not be necessary to have an oral argument to establish these matters.

Due process requires that social security claimants be afforded a fair hearing.  Essential to a fair hearing is the right to an unbiased judge who fulfills his duty to develop a full and fair record.  An ALJ is presumed to be unbiased unless there is a specific showing for cause to disqualify. *Schweiker v. McClure*, 456 U.S. 188, 195-196 (1982).   The burden of establishing a disqualifying interest "rests on the party making the assertion." Id.   "[J]udicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."   *Liteky v. United States*, 510 U.S. 540, 555-556 (1994).  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women ... sometimes display" do not suffice. Id.  The magistrate judge concludes that, even assuming for the sake of argument that the ALJ showed signs of impatience, hostility, and anger at the hearing, nothing in the record suggests that the administrative process was tainted by bias and that due process was denied.

While we have concluded that there was no due process violation in this case, we do not mean to suggest that we approve of or endorse the types of judicial behavior mentioned in *Liteky*.  Nor do we believe that an ALJ is free to express impatience, hostility, and anger toward claimants and their representatives without limitation.  However, our research reveals that, although the ALJ's comportment was less than perfect in this case, it was by no means the worst that reviewing courts have confronted. See, for example, *Cooper v. Barnhart*, 345 F.Supp.2d 1309, 1311 (S.D.Ala., 2004)

8

(the ALJ referred to the claimant as a "junkie," a "little skinny twerp," a "skinny little white guy," and an "ex-con," and made insulting remarks about the claimant's family) and *Bronson v. Barnhart*, 2003 WL 329292 (9th Cir.) (the ALJ accused counsel of being from "outer space" and having "just returned from her spaceship").

### Eighth Contention

The plaintiff's eighth contention sheds light upon the effects of the plaintiff's mental impairments upon her daily activities and capacity to sustain work-like activities. The record contains a statement by the plaintiff's aunt, Dianna Stark, concerning Ms. Stark's personal observations bearing upon the issue of the plaintiff's ability to sustain work-like activities. See "third party function report" at AR, pp. 186-194.  According to Ms. Stark, when the plaintiff is in a manic phase, "she may be up for 2-3 days straight," and when in a depressed phase, she stays at home all day doing little more than sleeping and lacking the "will power or energy" to bathe, dress, or eat much anything; she "usually has about 10 - 16 good days per month [and] 14 bad days per month" (AR, pp. 188 and 194).  Ms. Stark also testified at the administrative hearing.  The vocational expert (VE) testified that, if one were to accept the degree of limitation described by the plaintiff and Ms. Stark, "all work would be eliminated with the frequency and severity of her bad days, depression" (AR, p. 80).

The VE testified that an individual with the limitations described in Finding No. 5 would retain the ability to perform a significant number of jobs in the national economy (AR, pp. 81-82). The plaintiff contends that "the ALJ erroneously concluded [she] is able to do the jobs of housecleaner, order filler, and an inspector, thus she is not disabled."  The magistrate judge concludes that the argument is persuasive only to the extent the ALJ was required to accept the

limitations opined by the plaintiff and Ms. Stark as opposed to those stated in Finding No. 5.  In

other words, the argument is persuasive only to the extent that the ALJ's credibility assessment was

flawed and not supported by substantial evidence.

### Third Contention

The plaintiff's third contention is that the ALJ's credibility assessment was not supported

by substantial evidence.  As we have seen, if the plaintiff, Dr. Roy, and Ms. Stark have described

the plaintiff's bipolar / anxiety disorder with any accuracy at all, the plaintiff's mental impairments

have a profound impact upon both the plaintiff herself and those around her.  To the extent the

plaintiff is as limited as these individuals described, the vocational testimony supports a conclusion

of disability.  As is typical in many Social Security disability cases, the heart of this case is the

ALJ's credibility assessment.  The ALJ found that the plaintiff's testimony was credible only to the

extent of the ALJ residual functional capacity (RFC) Finding No. 5.

An ALJ is "charged with the duty of observing a witness's demeanor and credibility."

*Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir., 1997). Hence, absent a compelling reason, a

reviewing court should not disturb an ALJ's credibility findings. *Smith v. Secretary*,

307 F.3d 377, 379 (6th Cir., 2001).  Nevertheless, 20 C.F.R.  § 404.1529(c) describes the kinds of

evidence that an ALJ should consider when determining the credibility of an individual's statements,

to-wit:

1) Daily activities;

2) The location, duration, frequency, and intensity of pain or other symptoms;

3) Precipitating and aggravating factors;

4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, received for relief of pain or other symptoms;

6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

Another important consideration in evaluating credibility is the ALJ's evaluation of the lay witness testimony, which is generally entitled to some "perceptible weight" if it is consistent with the medical evidence. *Lashley v. Secretary*, 708 F.2d 1048, 1054 (6th Cir., 1983).

"[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." *Rogers v. Commissioner*, 486 F.3d 234, 249 (6th Cir., 2007). Furthermore, while the ALJ need not recite an exhaustive list of factors bearing upon credibility in his written decision, Social Security Ruling (SSR) 96-7p provides as follows:

The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

An ALJ "may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir., 1990). In other words,

"discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir., 1997).

As we have seen, the legal standards regarding evaluation of "bias" claims are strict and relatively claimant-unfavorable. Accordingly, there are many cases, such as the present one, in which, although the ALJ's behavior and demeanor were less than ideal, they did not rise to the level of a due process violation. The magistrate judge submits that these types of cases warrant a careful consideration of the ALJ's credibility findings and rationale.

We began our discussion herein with a consideration of a letter dated September 15, 2008, from the plaintiff's ex-husband, Dr. Reynolds. We concluded that, as a medical opinion, the ALJ did not err in giving Dr. Reynolds' opinion "little weight." However, it should be apparent at this point that Dr. Reynolds was offering more than a strictly medical opinion. He was offering an opinion, based upon his own personal experience, to the effect that, although she may initially appear to be quite charming, over the long-term, his ex-wife proves to be extremely emotionally volatile and combative with the persons around her. Possibly, the ALJ himself experienced such a reaction. In any event, to the extent Dr. Reynolds was offering a medical opinion, it was simply to observe that these traits are consistent with the plaintiff's diagnosis of bipolar disorder. Ms. Stark's statement is somewhat different than that of Dr. Reynolds in that she was focusing upon the incapacitating effects of the plaintiff's "bad days" upon her ability to function and perform daily activities.

At the hearing, the ALJ indicated, in no uncertain terms, what he thought about Dr. Reynold's letter, commenting to counsel by way of a rhetorical and somewhat sarcastic question, "So how much [credit] do you think I'm going to give this [letter from Dr. Reynolds]?"  Similarly, in his written decision, the ALJ gives short shrift to Ms. Stark's opinions, noting simply that Ms. Stark testified that the plaintiff becomes suicidal at time, cries during phone conversations, and has a short attention span and memory problems (AR, p. 15).  These findings do not address the substance of Ms. Stark's testimony, which was that the plaintiff is incapacitated by depression approximately half of the time.

The magistrate judge concludes that the ALJ erred in dismissing out of hand the lay opinions of Dr. Reynolds and Ms. Stark.  The ALJ failed to give these opinions any "perceptible weight" as contemplated by *Lashley v. Secretary*, 708 F.2d 1048, 1054 (6th Cir., 1983).  The undersigned further concludes that, at no point in his written decision did the ALJ explicitly provide reasons for rejecting these opinions or "give specific reasons for the weight given to the individual's statements" as required by SSR 96-7p.  The ALJ's failure to adequately set out his reasoning constitutes an error of law that requires a remand for a new decision in this case.  The plaintiff's remaining claims are without merit.  We shall consider them in turn.

### First Contention

The plaintiff's first contention is that the ALJ improperly found that she had no "severe" fibromyalgia satisfying the so-called duration requirement prior to January 1, 2008 (AR, pp. 13-14). In her application for benefits, when asked "what are the illnesses, injuries, or conditions that limit your ability to work," the plaintiff responded "bipolar disorder and personality disorder" (AR, p. 138). She did not mention fibromyalgia.

In any event, a "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs," including physical functions such as walking, standing, sitting, and lifting and basic mental capacities such as ability to understand, remember, and carry out simple instructions. 20 C.F.R. § 404.1521. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, it must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

Judicial review contemplates a "harmless error" review. Hence, if the ALJ acknowledged the presence of at least one "severe" impairment at step two of the sequential evaluation process, the ALJ's failure to acknowledge an additional "severe" impairment is deemed "harmless" if the ALJ's residual functional capacity (RFC) finding, which is required at subsequent steps of the evaluation process, fairly summarizes the claimant's impairments as a whole. See *Maziarz v. Secretary*, 837 F.2d 240, 244 (6th Cir., 1987). The ALJ found that, although she was diagnosed with fibromyalgia in September 2008, after the date last insured of December 31, 2007, "there are no significant clinical findings that establish fibromyalgia" and the plaintiff "has not received ongoing treatment for this condition" (AR, p. 14). The ALJ acknowledged that the plaintiff suffers from a "severe" bipolar / anxiety disorder that limits her to simple, routine, one to three step job duties and instructions; thing or object-focused work activity; no fast paced work; a fixed routine; and occasional contact with supervisors, coworkers, and the general public on a casual and brief basis. Finding Nos. 2 and 5. Applying *Maziarz*, supra, in the present case, the magistrate judge concludes that, to the extent the plaintiff suffered from "severe" fibromyalgia satisfying the duration requirement prior to the date last insured, the plaintiff has failed to identify

any evidence that the fibromyalgia resulted in limitations in excess of those stated in Finding No. 5. Therefore, any error was harmless.

## Second Contention

The plaintiff's second contention is that the ALJ erred in finding that her bipolar / anxiety disorder does not satisfy the criteria of a medical impairment listed in Appendix 1 of the regulations. Listing 12.04 concerns "Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Listing 12.06 describes "Anxiety Related Disorders." To satisfy the so-called "B criteria" of Listings 12.04 and 12.06, a claimant must show the existence of two of the following: Marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. The "C criteria" of Listing 12.04 provides for a finding of disability if, among other things, the individual is unable to "function outside a highly supportive living arrangement." The ALJ found as follows (AR, p. 14):

> [W]hen evaluating the claimant's mental impairment under the B criteria of the listings, the record indicates ... no more than moderate difficulties maintaining concentration, persistence, or pace, and no more than moderate difficulties in maintaining social functioning .... In addition, the claimant has had no extended episodes of deterioration or decompensation. The evidence also does not suggest that the claimant is unable to function outside a highly supportive living arrangement under the C criteria of the listings.

The plaintiff argues that the foregoing findings are not supported by substantial evidence.

The "Listing of Medical Impairments" step of the sequential evaluation process (i.e., step three) is generally regarded as a determination by the Commissioner as to whether the record contains evidence satisfying certain objective medical criteria that warrant a conclusive

presumption of disability.   Hence, this court has had occasion to observe that "[t]o satisfy the

B criteria, plaintiff must show **(through medical evidence only)** *(emphasis added)* the existence

of two of the [B criteria]."  *Nelson v. Astrue*, 2008 WL 5101653 (W.D.Ky.).   In this case, the ALJ

relied upon testimony from licensed psychologist Robert Paul that the plaintiff's mental impairments

do not meet or equal a listed impairment (AR, pp. 14 and 68).   In contrast, the plaintiff attempts to

rely upon her own testimony and that of her aunt, Dianna Stark, in support of a conclusion that her

mental impairment satisfied the listed criteria prior to the date last insured.   The magistrate judge

concludes that the plaintiff has failed to provide probative medical evidence, which the ALJ was

required to accept, satisfying her burden of proof at step three of the evaluation process.

### Sixth Contention

The plaintiff's sixth contention is that "the ALJ erroneously gave little weight to Dr. Dil's

opinion, although he was the plaintiff's treatment physician in 2008."   On September 18, 2008,

Grover Dils, M.D., opined as follows (AR, p. 299):

> Ms. Gosser suffers from severe refractory bipolar disorder.  She suffers from irritable
> bowel syndrome and has had a recent problem with recurrent abdominal pain which
> has been incapacitating and debilitating.   She has had C-difficile colitis.
>
> Additionally, the patient suffers from chronic fibromyalgia and chronic pain
> syndrome.
>
> Because of the compilation of medical problems of her bipolar disorders,
> fibromyalgia, and intractable recurrent abdominal pain, I do not feel that she is able
> to participate in a workplace on a reasonable and productive consistent level.

The ALJ gave Dr. Dils' opinion "little weight" (AR, p. 17).   The magistrate judge concludes that

the ALJ did not err in giving Dr. Dils' opinion "little weight."   See 20 C.F.R.  § 404.1527(e)

("A statement by a medical source that you are disabled or unable to work" is entitled to no

"special significance" as such determinations are "reserved to the Commissioner").

16

**Seventh Contention**

The plaintiff's seventh and final contention is that "the ALJ erroneously considered the plaintiff's drug and alcohol abuse to find that the plaintiff is not disabled."  At the hearing, the plaintiff agreed to amend her onset of disability date to October 8, 2006, the date upon which she ceased using drugs, which date is reflected in the ALJ's written decision (AR, pp. 11 and 63-65). The plaintiff objects to the ALJ's passing commentary in his written decision that "[e]ven considering her drug and alcohol abuse, the undersigned does not find the claimant disabled, and thus the determination of materiality under Public Law 104-121 is not necessary" (AR, p. 17). The Commissioner states that he finds the plaintiff's argument "puzzling" (Docket Entry No. 13, p. 21).

In effect, Public Law 104-121 mandates that, if a claimant is, in fact, disabled but the disability is due, at least in part, to the effects of ongoing substance use/abuse, the claimant he will be deemed "not disabled" if (hypothetically) she would be not disabled if she ceased using drugs. The drug use is deemed "material" in such cases.  The use is immaterial if the claimant is not disabled regardless of whether she has used or continues to use drugs.  The magistrate judge interprets the ALJ's finding concerning the plaintiff's "drug and alcohol abuse," to which the plaintiff objects, as tantamount a determination that any drug use is immaterial in the plaintiff's case. The undersigned discerns nothing improper about the ALJ's finding.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision in which 1) Dr. Reynolds' opinion is considered as a lay opinion and not simply a medical opinion, paying particular attention to the implications of Dr. Reynolds' assertions on the plaintiff's ability to relate appropriately to supervisors, co-workers, and the general public; 2) Ms. Stark's opinion is given some perceptible weight, paying particular attention to her claim that the depressive phase of the plaintiff's bipolar disorder renders her incapable of sustaining daily activities approximately 14 days in a month; and 3) the Commissioner's credibility rationale satisfies the specificity requirements of SSR 96-7p.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings.  The original objections shall be sent to the Clerk of Court either electronically or by mail.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140 (1985).